Olga Poulsen, Respondent, v. Nassau Electric Railroad Company, Appellant.

*Negligence — passenger upon an electric car frightened into jumping therefrom by flashes emitted from the controller box — when the question of the defendant's negligence is for the jury.*

A passenger upon an electric car becoming alarmed by the flashing from the controller or motor box situated at the front railing of the car, jumped from the car while it was in motion and fell to the ground, receiving injuries. In an action brought by her against the railroad company to recover for such injuries there was evidence tending to show that the flashing was of an unusual character; that the controller was out of order; a fact which was easily discoverable, and that the car had not been inspected before it left the depot on the trip in question.

*Held,* that the question of the defendant's negligence was properly submitted to the jury, and that a judgment entered upon a verdict for the plaintiff would not be disturbed;

That negligence might also be imputed to the railroad company from the fact that the motorman, after the flashing or flaming began, permitted the car to continue its course without stopping to ascertain the cause of the flame until a new element of apprehension was introduced by the burning of the fuse.

Appeal by the defendant, the Nassau Electric Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 13th day of January, 1898, upon the verdict of a jury for $7,500, and also from an order, entered in said clerk's office on the 27th day of January, 1898, denying the defendant's motion for a new trial made upon the minutes.

The action was brought to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant.

*Stephen C. Baldwin,* for the appellant.

*Charles J. Patterson,* for the respondent.

Goodrich, P. J.:

The plaintiff, a woman thirty-two years of age, on the evening of August 12, 1896, was a passenger in an open trolley car of the defendant. The car was operated by a controller or motor box,

situated at the front railing of the car.  This controller is an upright box, having on the top a brake or handle which revolves a cylinder on the inside of the box.  Around the cylinder are long strips of metal, called fingers, which, as the cylinder revolves, come in contact with corresponding metallic fingers on an inclosing cylinder, thus making a circuit for the current.  As the handle moves to close or open the circuit, sparks or flashes are constantly emitted. Outside the interior works is a covering, the inside of which is lined with asbestos, upon which are impressed, and easily seen, black marks occasioned by the sparks or flashes.  These marks are more or less extensive, proportionally to the volume of the flashes.  The breaking of the current burns any dust or grease which may have accumulated on the fingers, and sometimes melts the metal so as to create little knobs, and this increases the volume of the flashes. At the top of the inclosing cover is an opening through which another brake or handle protrudes, which is used to turn the current on or off; and it is through this opening that the flashes are emitted so as to be visible to bystanders.

Underneath the flooring at the forward end of the car is a fuse consisting of a copper wire intended for a safety appliance and of such size and density that a dangerous or unnecessarily strong current will melt it and thus break the current.

At the time of the accident the car was going westerly along Park avenue, Brooklyn, between Clermont avenue and Adelphi street, when a flashing or flaming shot out of the controller box at the front of the car.  The motorman immediately turned off the overhead switch and stopped the current of electricity by which the car was operated, thus preventing the flashing, after which the current was turned on again and the car proceeded on its course for a distance of 100 feet, during which time the flashing continued.  The electric fuse above described then burned out with another flash, whereupon the plaintiff and her niece, Martha, a child twelve years of age, alarmed by the flashing, jumped from the car while it was still in motion, and the plaintiff falling to the ground broke her thigh bone and received other injuries.  The jury found a verdict in her favor of $7,500, and from the judgment entered thereon the defendant appeals.

This same accident was under consideration by this court in *Poul-*

*sen* v. *Nassau Electric R. R. Co.* (18 App. Div. 221), which was an action brought by the father of Martha to recover damages for the loss of the child's services. The County Court dismissed the complaint upon the merits, and the plaintiff appealed to the Appellate Division. This court, Mr. Justice HATCH writing the opinion, held that the case made by the plaintiff was sufficient to call upon the defendant for an explanation of the cause of the fire. The court said (p. 222): "It was not claimed upon the argument that the blowing out of a fuse, in the usual course, was attended with any other display than a flash of light, and we may take notice that the operation of street cars by electricity is not attended by the appearance of a car on fire, or that it travels upon the track in a blaze of fire. When this phenomenon is present it indicates an extraordinary condition and the presence of causes which are not usually co-existent in the ordinary operation of the car. Under such circumstances, the doctrine approved by us in *Gilmore* v. *Brooklyn Heights R. R. Co.* (6 App. Div. 117) has precise application."

In the *Gilmore* case, in which Mr. Justice BARTLETT wrote the opinion, the accident occurred from a sudden movement of the brake on the front platform, which being turned on tight was set free in some unexplained manner and struck the plaintiff as she was entering the car. The court said (p. 119):

" In the prudent operation of a street railroad, such an occurrence, endangering the safety of those who accept the invitation which is held out to them to become passengers, is unusual to say the least; and the circumstances bring the case within the rule that where the thing which causes an accident is controlled or managed by the defendant, ' and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' " (Citing cases.)

Following these decisions the defendant undertook, in the case at bar, to establish as a defense that the controller was a standard appliance in use and properly so throughout the United States; that no system of inspection can prevent flashes escaping from the box containing the controller; that even new controllers of this standard type will produce these flashes, and that in the ordinary

use and management of such controllers particles of dust or grease collected therein will cause such flashes.

There was evidence clearly tending to show that the flash which issued from the controller box was of a startling and unusual character, continuing while the car was going a distance of about 100 feet, and that it was followed by another flash caused by the burning out of the safety fuse under the forward part of the car.

Some of the witnesses describe the flashing or flaming from the controller as being from two to six feet in height and enveloping the motorman so that the whole front of the car seemed to be on fire. It was not surprising that such an exhibition should startle the plaintiff and that, to save herself from danger, she jumped from the car, and the fact that other passengers remained does not conclusively establish contributory negligence on her part in jumping. It is a significant fact that the motorman was not called as a witness, and that no explanation of his absence was offered, a fact which the jury were entitled to consider in judging of the cause and character of the flashing or flaming which alarmed the plaintiff. The question, therefore, is whether the defendant discharged its duty to its passengers.

*McCaig* v. *Erie Railway Co.* (8 Hun, 599) was an action to recover damages caused by sparks issuing from a locomotive. A judgment was rendered for the plaintiff, which was reversed by the General Term, the court saying (p. 601) : " The evidence was not sufficient to warrant a verdict for the plaintiff without further proof showing that such emission of sparks was *unusual* in degree or character, or the sparks were of an extraordinary size and such as would not be emitted from perfectly constructed locomotives." This case has special bearing upon the case at bar, by reason of the emphasis which the court placed upon the word unusual, and it cannot be doubted, from the testimony in this case, that the appearance of the flashing or flaming was of a very unusual character indeed.

Under the decisions above cited, the defendant was called upon to prove that the accident occurred without fault on its part. We think that the alleged explanation offered by the defendant did not explain. Assuming that the controller and the fuse were standard in character and the usual appliances, and that the fuse was intended

to prevent an undue and dangerous amount of electricity from passing into the controller, the evidence of the expert witnesses called by both parties, establishes that the controller is likely to become out of order by the presence of dust or grease on the fingers, so that it will emit sparks of unusual size; that there are three classes of light in successive gradations, which are described as, *first*, sparks; *second*, flashing, and, *third*, flaming; and that sparks are not dangerous, but that flashing, and especially flaming, indicate danger. It was not shown that there was any inspection of the car in question at any time during the day before the hour of the accident. There is evidence showing that the car was not allowed to continue its trip, but was taken back to the shop after the accident, and that the defendant's examiner found that " the controller was a little dirty   *   *   *   just a little dusty, a little dirty," although he adds that there was nothing unusual the matter, and that he only found it necessary to replace the fuse, and that the car was used the next day, without any repairs; but all of these matters were for the consideration of the jury in passing upon the question of the defendant's negligence.

One of the defendant's expert witnesses testified that he had on several occasions seen sparks, six inches in size, coming from a similar motor box, and that they were caused by an "accumulation of dirt, most always across the contacts; either a collection of dirt or a collection of moisture. I have never known these flames to come from any other causes."

The conductor of the car testified: " I knew the controller was out of order. The motorman told me that. I found it out as soon as the fuse blew. It was found out that the controller was out of order by looking inside the box. Q. What did you find inside the box? A. I saw that the works were black, and the motorman took the glove or handkerchief, or whatever he had, to wipe it off."

Thus it appears that there was no inspection of the car before it left the depot, on the trip in question; that the controller itself was out of order, and that this fact was easily discoverable, and, in fact, was discovered, by the subsequent inspection after the car was taken to the repair shop, that the motorman discovered something wrong about it, when he removed the outside covering, by reason of which the car was not permitted to continue its trip and was taken back to

the shop. These facts required the submission to the jury of the question of defendant's negligence in the inspection and use of the car.

Another ground upon which negligence may have been imputed to the defendant arises out of the fact that after the flashing or flaming began, the motorman permitted the car to continue its course without stopping, to ascertain the cause of the flame, until a new element of apprehension was introduced, namely, the burning out of the fuse. The jury were entitled to take this matter into consideration in passing upon the defendant's negligence, so that whether the accident was caused by failure of inspection and the consequent use of a car of which the controller was not in good order, or whether it resulted from the continuing motion of the car after its dangerous condition might have been and was discovered, the jury were justified in assuming the defendant's negligence.

It follows that the judgment must be affirmed, with costs.

Judgment and order unanimously affirmed, with costs.